Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3983 | **DATE** | 11/19/2001 |
| **CASE TITLE** | SOSEBEE vs. MASSANARI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [14-1] is denied. Pursuant to 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security is affirmed. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 23 2001 date docketed | 20 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/20/2001 | |
| SB | courtroom deputy's initials | date mailed notice CB | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS **DOCKETED**
EASTERN DIVISION

**NOV 2 3 2001**

| | |
|---|---|
| GEORGE E. SOSEBEE ) | |
| ) | |
| Plaintiff, ) | No. 01 C 3983 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| LARRY G. MASSANARI, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

George E. Sosebee seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying social security disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g). Sosebee moves for summary judgment.

### PROCEDURAL BACKGROUND

Sosebee filed an application for disability insurance benefits on April 17, 1995. The Commissioner denied his claim, and Sosebee timely requested a hearing before an Administrative Law Judge ("ALJ"). On June 18, 1997, the ALJ held a hearing where Sosebee, medical expert Paul B. Glickman, and vocational expert William J. Schweihs testified. The ALJ found Sosebee not disabled and denied his application. The Appeals Council declined to review the case, rendering the ALJ's decision final. 20 C.F.R. § 404.955. Sosebee now seeks judicial review.

1

## STATEMENT OF FACTS

### A. Sosebee's claim

Sosebee was terminated from his employment in January 1994. Sosebee was employed as a metal shop machine operator for nine years. R. at 49. Previously, Sosebee worked as a processing operator for ten years. *Id.* Since 1994, Sosebee has been unemployed. He claims his medical condition prevents him from working.

Sosebee complained of dizzy spells, headaches, and pain in his lower back and hips. *Id.* at 17. Sosebee claimed he could not stand for extended periods of time, experienced occasional numbness in his lower legs and feet, and was limited in his use of one finger. *Id.* at 71, 369, 379.

### B. Medical evidence

In her factual findings, the ALJ relied upon the diagnoses of Dr. Arnold Kallen, Dr. David Miller, Dr. Leonard Smith, Dr. Claude Hamilton, and Dr. Ellen Herbener. In April 1995, Dr. Kallen determined Sosebee could lift ten pounds repeatedly, had full capacity to sit, and could perform gross and fine manipulations. *Id.* at 103. In January 1997, Dr. Miller treated Sosebee for hypertension and benign prostatic hypertrophy. *Id.* at 222. Dr. Miller determined Sosebee could lift and carry up to twenty pounds, sit four hours during an eight-hour day, and walk or stand for two hours during an eight-hour day. *Id.* In September 1997, Dr. Smith reported Sosebee had no atrophy, normal reflexes, motor functioning, gait and straight leg raising. *Id.* at 256-57. Dr. Smith concluded Sosebee did not have sitting limitations. *Id.* at 258-60. In April 1998, Dr. Hamilton determined Sosebee could lift up to thirty pounds, stand and walk up to two hours at a time, and had no sitting limitations. *Id.* at 276. Based on various medical test results, Dr. Hamilton suspected Sosebee was embellishing his pain symptoms. *Id.* In May 1998, Dr. Herbener noted Sosebee had low to borderline average

intelligence. But Dr. Herbener concluded Sosebee had a good ability to make occupational adjustments. *Id.* at 284-285.

C. **Medical expert testimony**

Dr. Paul B. Glickman diagnosed Sosebee with degenerative disc disease. He testified Sosebee's condition limited his ability to sit and stand. *Id.* at 396. But Dr. Glickman found no evidence of radiculopathy or neuropathy, including reflex changes or disc herniation. *Id.* at 395. Dr. Glickman testified Sosebee's impairments precluded him from performing heavy work, and standing on his feet for prolonged periods of time. Dr. Glickman opined Sosebee could not work at heights or use ladders. *Id.* at 403.

D. **Vocational expert testimony**

William J. Schweihs testified about Sosebee's residual functional capacity. Residual functional capacity is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R §§ 404.1545(a), 416.945(a). Schweihs noted Sosebee had transferable skills, including the ability to read blueprints and use a variety of measuring and inspection devices. *Id.* at 415. Based on Sosebee's residual functional capacity, Schweihs determined Sosebee could perform a number of sedentary jobs, including assembly and production inspector positions.

## DISCUSSION

I. **Standard of Review**

Judicial review of the Commissioner's final decision is limited. The role of the reviewing court is to determine whether substantial evidence in the record as a whole supports the Commissioner's decision to deny benefits. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). "The findings of the Secretary, as to any fact, if supported by substantial evidence, shall be

3

conclusive." 42 U.S.C. § 405(g). The court must affirm the Commissioner's decision if the decision is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. *Id.*

The court may not reevaluate facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336-37 (7th Cir. 1993); *Brown v. Chater*, 913 F. Supp. 1210, 1213 (N.D. Ill. 1996). Factual findings, if supported by substantial evidence, shall remain undisturbed unless an erroneous legal standard was applied. *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997). Substantial evidence in this context means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ must consider all relevant evidence and may not select and discuss only evidence supporting her ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Because the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Sosebee's request for review, this court's review is based on the ALJ's determinations. *Id.* at 332.

## II.     Summary Judgment standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving

party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). If the moving party meets this burden, the nonmovant must then respond by setting forth specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e).

### III. Disability under the Social Security Act

To qualify for disability benefits under the Social Security Act ("the Act"), a claimant must be disabled within the meaning of the statute. The Act defines a disabled person as one who is unable to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment that makes him unable to perform his "previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. A physical or mental impairment is "an impairment that results from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In situations where a mental impairment exists, the degree of functional loss resulting from the mental impairment must be determined.

The Act requires the factfinder to follow a five-step process to determine whether a claimant is disabled: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work

in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment (step three). If a claimant satisfies steps one and two but not step three, the claimant must establish step four – the claimant must demonstrate he cannot perform his past work. If step four is satisfied, the burden shifts to the Commissioner to satisfy step five. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At the fifth step, the Commissioner must consider the claimant's physical and mental impairments, age, education and work experience. *Wilson v. Chater*, No. 95 C 6590, 1997 WL 116803, at *3 (N.D. Ill. March 11, 1997). When denying benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Clifford*, 227 F.3d at 872.

## IV. Application

Sosebee disputes the ALJ's findings. The ALJ determined Sosebee had not engaged in substantial gainful activity since January 1994 (step one), and had a combination of impairments that were severe under the regulations (step two). 20 C.F.R. § 404.1521. However, the ALJ determined Sosebee could not establish step three because he did not have an impairment listed in, or medically equal to, an impairment in the regulations. R. at 17. Although the ALJ found Sosebee could not have returned to his past work because of his impairments (step four), he could have performed a number of other jobs in the national economy (step five). *Id.* Thus, the ALJ concluded Sosebee was not disabled. *Id.* at 23-24.

Sosebee raises three arguments to contest the ALJ's findings. Sosebee contends the ALJ erred when she determined the Commissioner satisfied its burden on step five. Next, Sosebee argues the ALJ ignored dispositive medical evidence, including expert medical testimony. Finally, Sosebee asserts the ALJ's credibility finding is erroneous.

6

## A. Availability of other jobs in the economy (Step Five)

The ALJ determined Sosebee's residual functional capacity allowed him to perform a limited range of nonextertional sedentary and light work with the following restrictions: he could not lift more than ten pounds at a time; he must have a sit/stand option in his employment; and he should avoid heights, moving machinery, vibration, ladders, scaffolds, and ropes. *Id.* at 17. Although the ALJ concluded Sosebee could not perform his past job, his skills were transferable to other jobs in the national economy. *Id.* at 22. Relying on the vocational expert's opinion and the record evidence, the ALJ concluded Sosebee could perform a number of sedentary and light jobs, including assembly-line, security monitor, packaging, and cashier positions. *Id.* at 23.

Sosebee attacks the specificity of the ALJ's decision. "The ALJ is not required to comment on every piece of evidence presented[.]" *Bailey v. Massanari*, No. 00 C 7506, 2001 WL 800068, at *5 (N.D. Ill. Jul. 10, 2001). In analyzing the ALJ's decision for gaps or contradictions, the court must give "the opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). Sosebee contends the ALJ did not specify his transferable skills in her factual findings. However, the ALJ relied upon the vocational expert's opinion based on hypothetical questions posed during the hearing. R. at 415-17. The vocational expert testified Sosebee had the ability to read blue prints, and use a variety of measuring and inspection devices. With those skills, the vocational expert concluded Sosebee could perform metals and plastics manufacturing, visual and production inspections, and assembly-line positions. *Id.* at 416. Sosebee does not point to any evidence in the record that contradicts the vocational expert's conclusion. Nor did Sosebee object to the ALJ's hypothetical questions at the hearing. *See Pizano v. Chater*, No. 96 C 1198, 1997 WL 11047, at *8 (N.D. Ill. Jan. 7, 1997).

Sosebee argues the ALJ failed to distinguish between the exact number of available light and sedentary jobs in the economy. The ALJ determined there were 5,000 security monitor jobs and 10,000 cashier jobs in the Chicago metropolitan area. R. at 23. That data referred to sedentary and light work positions. The vocational expert testified the available sedentary positions Sosebee could perform ranged from 3,000 to 4,000 positions. *Id.* at 415. The ALJ expressly relied on that testimony to conclude Sosebee had available sedentary jobs in the economy. *Id.* at 23. Consequently, the ALJ's factual findings are supported by substantial evidence in the record.

Sosebee asserts none of the jobs the vocational expert identified are cited in the Dictionary of Occupational Titles ("the dictionary") published by the Department of Labor. The vocational expert relied upon the dictionary, the Economic Statistics Quarterly, census data, and his own experiences. *Id.* at 418-21. The dictionary was not the exclusive source for the vocational expert's opinion. A vocational expert is permitted to rely on a range of sources in forming his conclusion. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (ALJ can rely on vocational expert testimony even if it contradicts the dictionary); *Logan v. Shalala*, 882 F. Supp. 755, 764 (C.D. Ill. 1995) (same).

### B. The ALJ's assessment of the medical evidence

Sosebee claims the ALJ ignored medical expert testimony. The ALJ determined Dr. Glickman's testimony further supported the conclusion that Sosebee was not disabled. R. at 20. The ALJ did not elaborate on the medical expert's opinion in her decision. However, the ALJ relied primarily on the medical reports of six physicians. Dr. Kallen found Sosebee could lift ten pounds, had full capacity to sit, and his physical capacity was restricted by 20%. *Id.* at 103. Dr. Smith determined Sosebee could lift twenty pounds occasionally, ten pounds frequently, sit for unlimited periods, and climb, balance, crouch and kneel. *Id.* at 259. Dr. Hamilton reached the identical

8

conclusion. Dr. Miller noted Sosebee's limitations on standing and sitting for extended periods of time. *Id.* at 188-89. Dr. Herbener found Sosebee's depression had improved since 1984, and his ability to make occupational and social adjustments was good. *Id.* at 19. Dr. Rios conducted an assessment of Sosebee's ability to do work-related activities. *Id.* at 20. He determined Sosebee could lift twenty pounds frequently, and his neurological senses were normal. *Id.* Based on the medical reports of those physicians, the ALJ established Sosebee's residual functional capacity. That determination is supported by the foregoing substantial evidence.

Nevertheless, Dr. Glickman's testimony is consistent with the ALJ's conclusion. Dr. Glickman testified Sosebee is precluded from performing heavy work. *Id.* at 396. Dr. Glickman stated Sosebee has some degree of degenerative disc disease, and suffered from back pain. *Id.* at 399. Those limitations were taken into account in the ALJ's residual functional capacity finding. Sosebee was limited to carrying less than ten pounds, and he must have a sit/stand option in future employment. *Id.* at 17. Sosebee fails to demonstrate Dr. Glickman's testimony contradicted the record evidence.

The ALJ found the medical report of Dr. Regan, a chiropractor, unpersuasive. Sosebee claims the ALJ erred by not relying on that evidence. The ALJ determined Dr. Regan formed his conclusions without taking X-rays or conducting diagnostic testing. R. at 21. According to Dr. Regan, Sosebee was "permanently unemployable." *Id.* The record evidence demonstrates Dr. Regan is the only medical witness to form that conclusion. Moreover, Dr. Regan was not Sosebee's treating chiropractor. Dr. Regan's treatment of Sosebee was a single occurrence. Dr. Glickman, the medical expert, testified Dr. Regan's conclusion was overstated and unsupported by the record. *Id.* at 399-400. Consequently, the ALJ was entitled to give Dr. Regan's report limited weight.

Sosebee asserts the ALJ did not fully examine the evidence submitted by Dr. Miller, Sosebee's treating physician. Dr. Miller treated Sosebee for hypertension and benign prostatic hypertrophy. *Id.* at 17. The ALJ took into account Dr. Miller's finding that Sosebee could lift and carry twenty pounds occasionally. That determination is consistent with the other physicians' medical findings. The ALJ found instructive Sosebee's complaints of back pain were never seriously treated by Dr. Miller. *Id.* Sosebee contends the ALJ failed to discuss Dr. Miller's conclusion that Sosebee could stand two hours out of an eight hour day. R. at 187. But Sosebee fails to demonstrate that opinion is inconsistent with the ALJ's factual findings. Indeed, the ALJ expressly included a stand/sit option in Sosebee's residual functional capacity. *See Reynolds v. Bowen*, 844 F.2d 451, 455 (7th Cir. 1988) ("[W]hile the treating physician's opinion is important, it is not the final word on a claimant's disability"). Consequently, the ALJ sufficiently considered Dr. Miller's assessment of Sosebee's condition.

The ALJ grounded her decision in the medical reports of six physicians, and vocational and medical expert testimony. The ALJ addressed the relevant evidence in her factual findings. Although portions of Dr. Miller and Dr. Regan's reports support Sosebee's claim, the ALJ determined the medical reports and testimony of other physicians and experts were more persuasive. Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, and not this court. *Stuckey v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

### C. Credibility determination

Sosebee contends the ALJ erred in her credibility findings. The ALJ's credibility determinations will not be overturned unless they were patently wrong. *Powers v. Apfel*, 207 F.3d

431, 435 (7th Cir. 2000). The decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.; see also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). The ALJ's credibility determination must include reasons for the finding supported by record evidence, and must explain the weight the ALJ gave to the claimant's testimony. *Zurawski*, 245 F.3d at 887 (citing Social Security Ruling 96-7p). The ALJ's credibility determination is entitled to deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)

Sosebee incorrectly characterizes the ALJ's credibility finding as a conclusory determination. The ALJ noted Sosebee was not taking narcotic pain medication. *Id.* at 20. The ALJ found instructive the absence of strong pain treatment in the face of severe complaints of pain. *See Inghram v. Massanari*, No. 98 C 6196, 2001 WL 965504, at *6 (N.D. Ill. Aug. 21, 2001). Bolstering that conclusion is the independent determination of Dr. Hamilton that Sosebee embellished his pain symptoms. Dr. Hamilton determined Sosebee appeared strong in the upper and lower extremities, and had good motor functions. *Id.* at 19. In addition, Sosebee cared for himself and his disabled wife. *Id.* at 21, 85-87; *see also Bailey*, 2001 WL 800068, at *8. Significantly, Sosebee did not stop working because of his medical condition. Sosebee was unemployed because his plant closed in January 1994. Moreover, Sosebee's prescribed medication was effective in controlling his medical condition. *Id.* at 20.

The ALJ is permitted to consider the lack of medical evidence as probative of the claimant's credibility. *See Powers*, 207 F.3d at 435 ("The discrepancy between the degree of pain attested to by

11

the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition"). The absence of medical evidence to establish Sosebee's claim of a completely disabling condition further supports the ALJ's credibility finding. *See* 20 C.F.R. § 404.1529(c)(2); *Knight*, 55 F.3d at 314 ("An ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole"); *Baleton v. Halter*, 156 F.Supp.2d 776, 786 (N.D. Ill. 2000). The ALJ sufficiently articulated her reasons for the credibility finding. That finding is reasonable and not patently wrong.

## CONCLUSION

The motion for summary judgment is denied. Pursuant to 42 U.S.C. § 405(g), the Commissioner's final decision denying social security disability benefits is affirmed.

November 19, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge